IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JUSTIN E. AGUSTIN,<br>#08429-122,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>    Defendants. | CIV. NO. 22-00167 JMS-WRP<br><br>ORDER GRANTING THE UNITED STATES OF AMERICA'S MOTION TO DISMISS COUNTS I AND IV OF THE THIRD AMENDED COMPLAINT, ECF NO. 54 |

## ORDER GRANTING THE UNITED STATES OF AMERICA'S MOTION TO DISMISS COUNTS I AND IV OF THE THIRD AMENDED COMPLAINT, ECF NO. 54

### I. INTRODUCTION

Before the court is Defendant United States of America's Motion to Dismiss Counts I and IV of the Third Amended Complaint ("TAC"), ECF No. 54, filed by pro se Plaintiff Justin E. Agustin pursuant to the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680.[1]  In the TAC, Agustin asserts assault and battery (Count I) and negligence (Count IV) claims against the United States based on an incident that allegedly occurred while he was incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu").[2]  ECF No. 31.  For the following reasons, the United States' Motion is GRANTED.

## II.  BACKGROUND

### A.  Factual Background

The TAC alleges that on or about September 8, 2018, former Bureau of Prisons ("BOP") correctional officer Randall Salazar ("CO Salazar") entered Agustin's cell at FDC Honolulu.  *Id*. at PageID.112.  Without provocation, CO Salazar punched Agustin "several times" in the chin and jaw, forcibly held Agustin's neck against a metal desk, and reached down the back of Agustin's pants with one hand to touch his buttocks "in a suggestive and/or sexual manner."  *Id*.  CO Salazar also told Agustin, "I have people in the mainland, you are going to get stabbed up and your ass fucked."  *Id.*

---

[1] The court previously dismissed the TAC's other five Counts.  *See* ECF Nos. 34, 76, & 78.  Thus, Agustin's FTCA claims against the United States in Counts I and IV are the only remaining causes of action in this lawsuit.

[2] Agustin is currently incarcerated at Federal Correctional Institution Schuykill in Minersville, Pennsylvania.  *See* ECF No. 45; *see also* Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number," enter "08429-122" in "Number" field, and select "Search") (last visited Oct. 1, 2024).

2

Sometime after the incident, CO Salazar told Agustin that he had given "[Agustin's] peoples information to Adam you rat bitch." *Id.* Agustin believed that CO Salazar was referring to Adam Bogema, another inmate who was incarcerated at the FDC Honolulu. *Id.*

According to Agustin, Bogema believed that Agustin had assisted law enforcement in a case against him. *Id.* at PageID.120. Previously, CO Salazar had accused Agustin of cooperating with law enforcement in a case against Bogema. *Id.* Agustin feared that "once [CO Salazar] provided [Bogema] with his family information, [Bogema] would cause them significant harm in retaliation for him assisting law enforcement." *Id.*

**B.     Procedural Background**

Agustin commenced this action by filing the original Complaint in the United States District Court for the Eastern District of California. ECF No. 1. Before that court had an opportunity to screen the pleading, Agustin filed a First Amended Complaint. ECF No. 5. A magistrate judge in the Eastern District of California transferred the case to this district on April 13, 2022. ECF No. 9.

On July 7, 2022, this court issued an Order Dismissing in Part First Amended Prisoner Civil Rights Complaint, ECF No. 5, with Partial Leave to Amend. ECF No. 17. The court received Agustin's Second Amended Complaint ("SAC") on August 22, 2022. ECF No. 20. On September 14, 2022, the court dismissed the SAC in part and directed service. ECF No. 21.

Prior to serving the SAC, Agustin filed a motion seeking leave to file another amended pleading, ECF No. 27, and the court granted that motion, ECF No. 29. The court received the TAC on December 22, 2022. ECF No. 31. In the TAC, Agustin named as Defendants the United States of America, the BOP, and CO Salazar. *Id.* at PageID.108. Agustin asserted *Bivens* claims against CO Salazar alleging that he had used excessive force (Count VI) and invaded his privacy (Count VII). *Id*. at PageID.117–118. Agustin also asserted FTCA claims against the United States for assault and battery (Count I), violations of the Hawaii Constitution (Counts II, III, V), negligence (Count IV), and a violation of Ohio law (Count VII). *Id.* at PageID.112–118.

On January 11, 2023, the court issued an order dismissing in part the TAC and directing service. ECF No. 34. Specifically, the court dismissed all claims against the BOP, and Agustin's FTCA claims against the United States in Counts II, III, V, and VII. *Id.* at PageID.158–159. The court concluded that Agustin's *Bivens* claims against CO Salazar in Counts VI and VII could proceed. *Id.* at PageID.165–166. The court further concluded that Agustin's FTCA claims against the United States in Counts I and IV could also proceed. *Id.* at PageID.156–158.

On September 11, 2023, the United States moved to dismiss Agustin's FTCA claims in Counts I and IV. ECF No. 54. The United States argued that Count I should be dismissed because CO Salazar's alleged actions fell outside the

4

scope of his employment.  ECF No. 54-1 at PageID.231–234.  The United States further argued that Count IV should be dismissed because the FTCA's discretionary-function exception barred those claims.  *Id.* at PageID.234–239.  The court deemed the motion to be withdrawn without prejudice after issues arose regarding Agustin's service of the TAC on CO Salazar.  ECF No. 66.

On July 29, 2024, the court dismissed Agustin's claims against CO Salazar.  ECF No. 78; *see also* ECF NO. 76.  The United States then renewed its motion to dismiss, ECF No. 80, Agustin filed his response, ECF NO. 82, and the United States filed its reply, ECF No. 83.  The court decides the Motion without a hearing pursuant to Local Rule 7.1(d).

### III.  <u>STANDARDS OF REVIEW</u>

A.  **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) permits a motion to dismiss for lack of subject matter jurisdiction.  A challenge to the court's jurisdiction under Rule 12(b)(1) can be either "facial" or "factual."  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 780 (9th Cir. 2014).  "A 'facial' attack asserts that a complaint's allegations are themselves insufficient to invoke jurisdiction, while a 'factual' attack asserts that the complaint's allegations, though adequate on their face to invoke jurisdiction, are untrue."  *Id.* at 780 n.3.  The court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the nonmovant's well pleaded factual allegations as true and drawing all reasonable inferences in the

nonmovant's favor, the court determines whether the allegations are sufficient to invoke the court's jurisdiction. *See, e.g.*, *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

**B.     Pro Se Pleadings**

Because Agustin is proceeding pro se, the court liberally construes the TAC and resolves all doubts in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears that Agustin can correct the defects in the TAC, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000), but if a claim or pleading cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013); *see also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment") (citation omitted) (second alteration in original).

## IV.  DISCUSSION

"Sovereign immunity is an important limitation on the subject matter jurisdiction of federal courts. The United States, as sovereign, can only be sued to the extent it has waived its sovereign immunity." *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

The FTCA generally waives the United States' sovereign immunity and permits tort suits for damages against the government "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *Esquivel v. United States*, 21 F.4th 565, 572–73 (9th Cir. 2021). Specifically, the FTCA grants district courts jurisdiction over civil actions for money damages for negligent or wrongful acts or omissions of government employees acting in the scope of employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Esquivel*, 21 F.4th at 572–73.

### A.   Assault and Battery Claim Against the United States Based on CO Salazar's Conduct

In Count I, Agustin asserts an assault and battery claim against the United States based on CO Salazar's conduct. ECF No. 31 at PageID.112. The United States argues that the court lacks jurisdiction to consider this claim because CO Salazar's conduct fell outside the scope of his employment. ECF No. 54-1 at PageID.231–234. The court agrees.

In general, intentional torts are not cognizable under the FTCA. *See* 28 U.S.C. § 2680(h). The FTCA's "law enforcement proviso," however, waives the United States' sovereign immunity for certain intentional torts, including assault and battery, committed by law enforcement officers of the United States

Government.  *Id.*  BOP correctional officers are "law enforcement officers" for purposes of 28 U.S.C. § 2680(h).  *See Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 807 (9th Cir. 2003).

The law enforcement proviso applies only when "the acts or omissions giving rise to the claim occur while the officer is 'acting within the scope of his office or employment.'"  *Millbrook v. United States*, 569 U.S. 50, 54–55 (2013) (quoting 28 U.S.C. § 1346(b)(1)).  "Accordingly, the lynchpin question in FTCA cases is whether the employee was acting within the scope of employment at the time of the allegedly tortious act.  The law applicable to determine whether a government employee was acting within the scope of employment is 'the law of the place where the act or omission occurred.'"  *Kashin v. Kent*, 457 F.3d 1033, 1037 (9th Cir. 2006) (quoting 28 U.S.C. § 1346(b)(1)).  "This law is generally the respondeat superior law of the state in which the alleged tort occurred."  *Id.* (citation omitted).  Here, the court looks to Hawaii law.

In evaluating whether an employee's conduct was within the scope of his or her employment, Hawaii courts follow the Restatement (Second) of Agency § 228.  *See State v. Hoshijo ex rel. White*, 102 Haw. 307, 319–20, 76 P.3d 550, 562–63 (Haw. 2003); *see also Clamor v. United States*, 240 F.3d 1215, 1217 (9th Cir. 2001); *Patrick v. 3D Holdings, LLC*, 2014 WL 1094917, at *14 (D. Haw. Mar. 18, 2014).  Under this standard, an employee's conduct is within the scope of employment only if:

8

> (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to the serve the master; and (4) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

Restatement (Second) of Agency § 228 (Am. L. Inst. 1958); *Hoshijo*, 76 P.3d at 562–63.  "Conduct of a servant is not within the scope of employment [or authority] if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228; *Hoshijo*, 76 P.3d at 562–63.

Here, Agustin alleges that CO Salazar punched him several times near his chin and jaw, forcibly held his neck against a metal desk, and reached down the back of his pants and touched his buttocks "in a suggestive and/or sexual manner."  ECF No. 31 at PageID.112.  Although Agustin correctly notes that CO Salazar acted within the time and space limits of his employment, this alone is not enough to show that CO Salazar's actions were within the scope of his employment.

Agustin cannot plausibly allege that CO Salazar's actions fell within the type of conduct he was hired to perform.  Nor can Agustin allege that CO Salazar somehow sought to serve the BOP or the United States through his actions.  Additionally, Agustin has not alleged that CO Salazar's use of force was not

unexpectable by the BOP and the United States.³  In short, nothing alleged in the TAC suggests that CO Salazar acted based on anything other than his own "personal motives, . . . unrelated and even antithetical to" the BOP's mission and expectations of its employees.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757 (1998) (concluding that "[t]he general rule is that sexual harassment . . . is not conduct within the scope of employment").  Thus, Agustin has not plausibly alleged that CO Salazar was acting within the scope of his employment.  *See Doe v. United States*, 2010 WL 1904976, at *3–4 (D. Haw. May 10, 2010) (concluding that sexual assault by BOP electrician at FDC Honolulu was not within the scope of his employment); *see also Vargas v. City & Cnty. of Honolulu*, 2020 WL 3547941, at *18–19 (D. Haw. June 30, 2020) (concluding that sexual assault by on-duty police officer was not within the scope of employment); *Motelewski v. Maui Police Dep't*, 2012 WL 3780188, at *4 (D. Haw. Aug. 30, 2012) (same), *reconsideration granted in part*, 2013 WL 361762 (D. Haw. Jan. 28, 2013); *Ho-*

---

³ In fact, BOP policy forbids the very sort of conduct alleged in the TAC.  *See* Federal Bureau of Prisons, Program Statement 3420.12 (Standards of Employee Conduct), https://www.bop.gov/policy/progstat/3420_012.pdf (June 24, 2024) ("An employee may not use . . . physical violence . . . toward inmates, or use any force beyond what is reasonably necessary to subdue or control an inmate") [https://perma.cc/BA6Y-RWCM]; Federal Bureau of Prisons, Program Statement P5566.07 (Use of Force, Application of Restraints, and Firearms), https://www.bop.gov/policy/progstat/5566.07.pdf (July 17, 2024) ("The Bureau of Prisons authorizes staff to use force only as a last alternative after all other reasonable efforts to resolve a situation have failed. When authorized, staff must use only that amount of force necessary to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order.") [https://perma.cc/LS5K-MLBB].  The court takes judicial notice of these program statements.  *See United States v. Thornton*, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008); *United States v. Tidzump*, 841 F.3d 844, 845 n.1 (10th Cir. 2016).

*Ching v. City & Cnty. of Honolulu*, 2009 WL 1227871, at *13 (D. Haw. Apr. 29, 2009) (concluding sexual assault and sexual harassment by police officer "was clearly outside of the course and scope of his employment").

To the extent Agustin relies on *McCormack v. City & County of Honolulu*, 762 F. Supp. 2d 1246 (D. Haw. 2011), that case does not help him. In *McCormack*, the plaintiff asserted a respondeat superior claim against the City & County of Honolulu based on an alleged assault and battery that occurred during an arrest. 762 F. Supp. 2d at 1253. Unlike the plaintiff in *McCormack*, Agustin has not plausibly alleged that CO Salazar's actions—that is, repeatedly punching Agustin in the head, holding his neck against a metal desk, and reaching down the back of his pants, all without provocation—were the type of conduct CO Salazar was hired to perform, were somehow done to serve the BOP or the United States, and were not unexpectable by the BOP and the United States.[4]  Count I is therefore DISMISSED.

---

[4] Although the breadth of the law enforcement proviso is narrowed by the scope-of-employment requirement, the proviso is not an empty vessel. For example, although law enforcement officers are permitted to use a reasonable amount of force to effectuate an arrest, *see Michino v. Lewis*, 2015 WL 3752503, at *7 (D. Haw. June 16, 2015), at some point the force used can become excessive and could give rise to a claim under the FTCA. *See Tekle v. United States*, 511 F.3d 839, 854–55 (9th Cir. 2007) (allowing certain FTCA claims to proceed where federal agents allegedly committed the tort of assault and battery while executing search and arrest warrants); *see also Avina v. United States*, 681 F.3d 1127, 1131–33 (9th Cir. 2012) (allowing certain FTCA claims to proceed where federal agents allegedly committed the tort of assault and battery while executing a search warrant). Unlike these cases, Agustin cannot plausibly allege that CO Salazar's unprovoked actions were within the scope of his employment.

### B. Negligence Claims Against the United States

In Count IV, Agustin asserts that the United States' negligence caused him harm. ECF No. 31 at PageID.115, 127–129. Specifically, Agustin alleges that the United States failed to properly screen, hire, train, or supervise its employees, and "failed to provide policies and procedures that ensure the safety of inmates." *Id.* at PageID.128–129. The United States argues that the court lacks jurisdiction to consider the claims in Count IV because they fall within the FTCA's discretionary-function exception. ECF No. 54-1 at PageID.234–239. The court agrees.

Under the discretionary-function exception to the FTCA, the United States preserves its sovereign immunity from suit as to any claim that is:

> based upon an act or omission of an employee of the Government . . . or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a); *see also Schurg v. United States*, 63 F.4th 826, 831 (9th Cir. 2023).

Courts apply a two-step test to determine whether the exception applies. "Courts must determine whether (1) the challenged actions involve an element of judgment or choice and, if so, whether (2) the judgment is of the kind

12

that the discretionary function exception was designed to shield." *Schurg*, 63 F.4th at 831. (internal quotation marks and citations omitted).

At step one, the court must "determine whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action." *Id.* (internal quotation marks and citation omitted).  This inquiry focuses on the "nature of the conduct, rather than the status of the actor, and a government employee's action is nondiscretionary where it is specifically prescribed by a federal statute, regulation, or policy." *Id.* (internal quotation marks and citation omitted).  If there is an "element of judgment or choice," the court proceeds to the second step. *Id.* (internal quotation marks and citation omitted).

At step two, the court asks, "whether the government actor's action or inaction was based on considerations of public policy, which are the kind that the discretionary function exception was designed to shield." *Id.* (internal quotation marks and citation omitted).  "More specifically, if the judgment involves considerations of social, economic, or political policy, the exception applies." *Nieves Martinez v. United States*, 997 F.3d 867, 876 (9th Cir. 2021) (citation omitted).

13

### 1.     *Screening, Hiring, Training, and Supervising Employees*

To the extent Agustin alleges that the United States failed to properly screen, hire, train, or supervise its employees, ECF No. 31 at PageID.128, it is well settled that "decisions relating to the hiring, training, and supervision of employees usually involve policy *judgments* of the type Congress intended the discretionary function exception to shield."  *Miller v. United States*, 992 F.3d 878, 886 (9th Cir. 2021) (quoting *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)).  Agustin does not allege that the BOP's decisions in screening, hiring, training, and supervising CO Salazar involved no element of judgment, choice, or discretion.  Nor has Austin identified a statute, regulation, or policy that prescribed any conduct by the BOP in this regard.  The court therefore proceeds to step two.

At step two, the Ninth Circuit has explained that "the decision of whether and how to retain and supervise an employee . . . [is] the type of discretionary judgment[] that the exclusion was designed to protect."  *Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (per curiam); *see also Doe v. United States*, 2014 WL 7272853, at *13 (D. Haw. Dec. 17, 2014) ("[C]ourts have found that decisions relating to the training, supervision, and discipline of employees involve the type of judgment that the discretionary function exception was designed to shield.").  Thus, Agustin's claims based on the hiring, training, and supervision of CO Salazar are barred by the discretionary-function exception.

### 2.     *Policies and Procedures Regarding Inmate Safety*

Agustin also alleges that the United States "failed to provide policies and procedures that ensure the safety of inmates under their care and control." ECF No. 31 at PageID.128–129.  Specifically, Agustin alleges that the United States did not adopt policies and procedures regarding "the need to provide medical care for injured inmates," "the need to report allegations of sexual assault," "the need to keep [inmates'] records confidential and not redisclose personal inmate information to other inmates," "the need to actively monitor security cameras to ensure inmate safety," "the need of employees to request assistance when entering an inmate's cell," and "the need to investigate an employee and/or prospective employee's background prior to hiring them and/or placing them in a specific housing unit." *Id.*

At step one, although Agustin does not identify any federal statute, regulation, or policy that required the BOP to adopt any particular policy or procedure regarding inmate safety, under 18 U.S.C. § 4042(a)(2), the BOP must "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States."  The BOP must also "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(a)(3).

As courts have concluded, however, 18 U.S.C. § 4042 "outlines federal prison officials' general duty of care toward inmates, but [it] does not prescribe a specific course of conduct that leaves no room for choice or judgment." *Barian v. United States*, 728 F. App'x 703, 705 (9th Cir. 2018) (internal quotation marks omitted); *see also Montez ex rel. Est. of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004) ("[T]he duty imposed by § 4042(a) is of a general nature[.] . . . BOP officials are given no guidance, and thus have discretion, in deciding how to accomplish these objectives."); *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception."); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that [18 U.S.C. § 4042] sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty."). Because 18 U.S.C. § 4042 includes an element of judgment or choice, the court proceeds to the second step.

At step two, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324 (1991); *Gonzalez v. United States*, 814 F.3d 1022, 1028 (9th Cir. 2016) (quoting *Gaubert*, 499 U.S. at 324). To the extent Agustin asserts that the BOP

16

failed to adopt specific policies and procedures related to inmate safety, "[t]ypically, the promulgation of policies and rules is protected by the FTCA's discretionary function exception." *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000); *see also Futi v. United States*, 2010 WL 2900328, at *15 (D. Haw. July 22, 2010).

Invariably, decisions regarding the safety and security of inmates are grounded in public policy. *See, e.g.*, *Ruby v. United States*, 2019 WL 2089498, at *5 (E.D. Cal. May 13, 2019) ("[T]he decisions made by BOP officials were grounded in public policy, namely, assuring the safety and security of inmates and efficiently managing the prison."); *Sears v. United States*, 2007 WL 527500, at *7 (W.D. Wash. Feb. 14, 2007) (noting that decisions as to inmate security "necessarily implicate Congress' policy decision to allow the BOP to choose the appropriate means of supervising and protecting inmates"); *Mitchell v. United States*, 149 F. Supp. 2d 1111, 1114 (D. Ariz. 1999) (holding that "[d]ecisions by governmental officials as to the day-to-day security needs of a prison . . . are judgment calls and choices based on policy determinations that seek to accommodate safety [goals] and the reality of finite agency resources") (internal quotation marks and citation omitted) (alteration in original).

Agustin's claims based on the absence of particular policies and procedures regarding inmate safety are, therefore, also barred by the discretionary-function exception. Thus, Count IV is DISMISSED.

## V. <u>CONCLUSION</u>

(1) The United States' Motion to Dismiss Counts I and IV of the Third Amended Complaint, ECF No. 54, is GRANTED, and Agustin's FTCA claims against the United States in those Counts are DISMISSED.

(2) Because Agustin has already had multiple opportunities to amend his pleadings, and further amendment would be futile, this dismissal is with prejudice. *See, e.g.*, *Bishop v. United States*, 2017 WL 1381653, at *14 (D. Haw. Apr. 13, 2017).

(3) Because the court previously dismissed all claims against the BOP, Agustin's FTCA claims against the United States in Counts II, III, V, and VII, *see* ECF No. 34 at PageID.166, and Agustin's *Bivens* claims against CO Salazar in Counts VI and VII, *see* ECF Nos. 76, 78, there are no remaining claims in this action. The Clerk of Court is therefore DIRECTED to enter judgment and close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 1, 2024.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Agustin v. United States of America, et al.*, Civ. No. 22-00167 JMS-WRP, Order Granting the United States of America's Motion to Dismiss Counts I and IV of the Third Amended Complaint, ECF No. 54